This is a zoning case.
Our review of the record reveals the following pertinent facts: The property at issue in this appeal is a 2500-square-foot building located on 8th Avenue West (U.S. Highway 78), immediately across from Legion Field, a football stadium and public park in the city of Birmingham. *Page 1265 
From 1969 until December 1992, the owner of the property operated a lounge on the premises. During this interval of time, the zoning classification of the property was "B-2" (general business district). A lounge was considered a permitted use under this zoning classification.
In December 1992 the active operation of the lounge ceased, at which time the owner's son, Charlie Axel, Jr., commenced renovating the property in order to bring it in compliance with the requirements of the Jefferson County Health Department and the Birmingham Fire and Life Safety Code. The renovation process extended from January 1993 until September 1995.
In September 1995 Axel leased the property to Jessie Davis, who was under the impression that a lounge was a permitted use. However, a few years before Davis entered into the lease, the zoning classification of the property had changed from B-2 to "C" B-1 (contingency neighborhood business district), causing the operation of the lounge to become a nonconforming use.
The city of Birmingham zoning ordinance (zoning ordinance), however, provided that uses, such as the lounge, which were legal when established, were allowed to continue in operation even after a change in the zoning classification. In other words, the lounge became a "legal nonconforming use."
Davis learned for the first time that there was a problem with the zoning when he applied for his business license. Davis, without counsel, visited the Birmingham Planning and Zoning Office and was informed by Tom Wilkins, a senior planner, that the nonconforming use had been amortized or terminated. Wilkins advised Davis to apply for a variance. In fact, Wilkins prepared the application for Davis to the Zoning Board of Adjustment of the city of Birmingham (Board).
After a hearing the Board denied Davis's application for a variance, and Davis appealed to the circuit court of Jefferson County. The circuit court, after a trial de novo, reversed the decision of the Board and entered a judgment, wherein it determined that the subject property had not lost its nonconforming use.
The judgment of the circuit court stated the following in pertinent part:
 "Mr. Wilkins and the planning office prepared for [Davis's] signature an application to the Board of Zoning Adjustment for a variance. Such application should have been under and pursuant to Article VIII, Section 5(1), of the Birmingham Zoning Ordinance, which provides as follows:
 " 'The Board (the Board of Zoning Adjustment) in appropriate cases and subject to appropriate conditions and safeguards shall have the following powers:
 " '1. To hear and decide appeals where it is alleged there is error in any order, requirement, decision or determination made by the Director of the Urban Planning Department in the enforcement or application of this Ordinance.'
 "[The Board] tried the case under Article VIII, Section 5(2), of the Birmingham Zoning Ordinance, which relates to an area variance wherein the applicant or petitioner must prove an unnecessary or undue hardship. . . . Mr. Wilkins of the Birmingham Planning Department testified that he made the decision or determination that the nonconforming use was amortized or terminated.
 "At the time of filing the application, [Davis] inquired of Wilkins as to criteria used in determining whether or not the nonconforming use was amortized or terminated, and Wilkins informed [Davis] that if the utilities had not been discontinued, then such use was not amortized or terminated.
 "None of the utilities, including gas, water, power, or telephone, were discontinued during the period of renovation, which extended from January 1993 until September 1995.
 "[Davis] and his lessor expended substantial sums of money in renovating the leased premises to bring same in compliance with the requirements of the Jefferson County Health Department and the *Page 1266 
city of Birmingham Fire and Life Safety Code.
 "The court is satisfied from the evidence, and from its view of the subject property and the surrounding area, that the use of the property as a restaurant and lounge will not adversely affect nearby and surrounding properties and that such use is an appropriate use.
 "The issue presented and tried by the court is whether the property has lost its nonconforming use, and not whether [Davis] was entitled to an area variance. Use variances are not permitted under the city of Birmingham Board of Zoning Adjustment Enabling Act (Act No. 326, adopted August 12, 1969).
 "The court is of the opinion that the decision or determination by the Planning Department of the city of Birmingham that the subject property had lost its nonconforming use is erroneous."
The Board appeals.
The dispositive issue on appeal is whether the trial court erred in concluding that the property had not lost its nonconforming use.
Initially, we note that an appeal from the decision of a Board of Zoning Adjustment is to the circuit court and is governed by Ala. Code 1975, § 11-52-81, which states the following:
 "Any party aggrieved by any final judgment or decision of such board of zoning adjustment may . . . appeal therefrom to the circuit court. . . . In case of such appeal such board shall cause a transcript of the proceedings in the action to be certified to the court to which the appeal is taken, and the action in such court shall be tried de novo."
Under this statute, the circuit court can examine only those issues which could be properly presented to the Board and is without jurisdiction to try an issue not raised before the Board. White's Excavation Construction Co. v. Board of ZoningAdjustments of Daphne, Alabama, 636 So.2d 422
(Ala.Civ.App. 1994).
Additionally, we would note that in a non-jury case, the trial judge is the finder of fact and that a presumption of correctness attaches to his findings and to the judgment based on those findings. Clardy v. Capital City Asphalt Co.,477 So.2d 350 (Ala. 1985). The resulting judgment will not be disturbed on appeal unless it is manifestly unjust, palpably wrong, or without supporting evidence. Id.
Furthermore, "when the court inspects the premises involved in a dispute prior to making its findings of fact, this buttresses the presumption of correctness given to the court's findings." Smith v. Smith, 482 So.2d 1172, 1174 (Ala. 1985).
On appeal the Board adamantly contends that the circuit court was without jurisdiction to determine whether the property had lost its nonconforming use because, it says, that issue was never raised by Davis in his application, nor was that issue ever discussed before the Board. The Board contends that the only issue raised at the hearing was whether Davis should be granted a variance for the "resumption of a nonconforming use."
In the instant case, the Board did hold a hearing on Davis's application. However, there is nothing in the record before us to indicate what transpired at that hearing or what issues were raised. This court must, therefore, conclusively presume that the circuit court had adequate evidence before it to frame its issues. Woodard v. State Dep't of Industrial Relations,599 So.2d 48 (Ala.Civ.App. 1992). After carefully reviewing the voluminous record, we determined that there was an abundance of evidence presented to the circuit court, relating to both the resumption of the nonconforming use and to whether the nonconforming use had been lost. And, as noted previously, Wilkins, a senior planner with the Birmingham Planning Department, made the determination that the property had lost its nonconforming use.
It is quite obvious that the issue of whether a piece of property has lost its nonconforming use and the issue of whether to allow the resumption of a nonconforming use are obviously overlapping and substantially similar. Therefore, we conclude that the circuit court obviously did not raise any new issues that were not before the Board. *Page 1267 
In any event, the circuit court determined that the Board erred in trying Davis's case under the subsection of the zoning ordinance relating to area variances. According to the zoning ordinance, an area variance relates to any modification in the "narrowness, shallowness, or shape of a specific piece of property . . . or exceptional topographic conditions." The zoning ordinance also requires that an applicant applying for an area variance demonstrate that he will suffer unique or peculiar hardships if the variance is not granted. It is obvious that Davis was not seeking an area variance.
Next, the Board contends that the nonconforming use of the lounge ceased for a period of three years and that such cessation of use constituted an abandonment of the prior nonconforming use. We disagree.
The section of the zoning ordinance relating to nonconforming uses provides that whenever a nonconforming use of any structure "becomes and remains vacant for a continuous period of two years or more, the use of the same shall thereafter conform to the use regulations of the district in which such structure or premises is located."
Our supreme court, in Board of Zoning Adjustment for the Cityof Lanett v. Boykin, 265 Ala. 504, 508, 92 So.2d 906, 909
(1957), has stated the following in pertinent part:
 "A discontinuance results from the concurrence of an intent to abandon and some overt act or failure to act which carries the implication of abandonment. It means something more than a temporary non-occupancy of a [building] for the purpose of making repairs. The remodelling or repairing of a [building] shows an intention to continue rather than to abandon the nonconforming use."
(Citations omitted.)
In the instant case, Axel, the lessor, testified that he intended to continue operating a restaurant and lounge on the premises. Axel further testified that he ceased the operation of the restaurant and lounge because an inspection by the Birmingham Health Department required him to undergo extensive renovations to the property in order to bring it in compliance with certain safety codes. Axel leased the property to Davis during the time he was renovating. The evidence reveals that Axel purchased a business license each year from 1993 to 1995 and that none of the utilities were ever disconnected during the period of renovation.
Even if we assume that the prior nonconforming use of the building as a lounge and restaurant had been lost, we conclude that there was ample evidence before the circuit court from which to conclude that the nonconforming use should have been resumed. There was numerous testimony and documentary evidence presented by both parties regarding the appropriateness of a restaurant and lounge in the subject area. We deem it unnecessary, however, to set out in detail that evidence. In sum, the evidence reveals that while the subject property does back up to single family detached residential dwellings, it is nevertheless fronted by U.S. Highway 78, which is a main thoroughfare. Legion Field, a football stadium and public park, is located directly across the street from the property. There are numerous other commercial buildings fronting on U.S. Highway 78. And, there are two other lounges immediately across from Legion Field on Graymont Avenue.
In light of the foregoing, the judgment of the circuit court is due to be affirmed. Therefore, all other issues raised by the Board are pretermitted.
The foregoing opinion was prepared by Retired Appellate Judge RICHARD L. HOLMES while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975.
AFFIRMED.
All the judges concur. *Page 1268